2320-47 Miller Industries Towing Equipment v. NRC Industries The door 27 is not stored within the interior compartment when the control panel is in the first position. Isn't that right? You can make that argument. I would say no. The door is stored within the interior compartment. The door 27 prime is forming one of the walls of the interior compartment. It's not within the interior compartment. Fair enough. I guess the problem is that's some very real tension in the claim with what your proposed construction of the claim is. I don't think so, Your Honor, because whether it's figure 3 or figure 3A, the door is the closure mechanism. The claim also requires that when the control panel is in the second position, that the control panel is remote from the vehicle. That's not true for door 27 prime and figure 3A, right? It's not remote from the exterior of the vehicle. It's up inside the vehicle. That's true, but later on in the claim, it talks about the control panel being in a downward-extended position. And the portion of the control panel that's in the downward-extended position has a base and a disk on it. And I think it's clear from claim 1 that that's what it's referring to. And the unrebutted testimony of Mr. Brown, the only post-it testimony, the only expert testimony, says that. Why do we care about that when the intrinsic evidence seems to supply the answer? Why do we care what a post-it said when we have intrinsic evidence which enables us to construe the claim? Well, I agree. I think the intrinsic evidence is clear here. But to the extent that there have been questions raised like, is the interior of the door still in the compartment, I think you can look to post-it testimony to say this is clearly what was intended. And you mentioned, very quickly, you mentioned Council 30. If you look at figure 4, Council 30 does not close the door. The door closes. It does not close the compartment. Excuse me. The door closes the compartment. Council 30 only partially closes the compartment. It has to be the door. Unless there's further questions, we may have to resume. All right. We'll give you 10 minutes for rebuttal. Ms. Olson. Good morning, Your Honors. May it please the Court, Alexander Olson on behalf of Apelli NRC Industries. I think that the panel already understands the issue here, which is we're talking about does control panel mean one thing, or does it mean one thing plus a separate door? And I would submit that all of the intrinsic evidence supports that it means, in fact, one thing. So that visceral initial reaction that it's one thing is sort of abundantly supported throughout the entirety of the patent, the specification, the claim language, the prosecution history. So I think that Judge Chen has already zeroed in on one of the most important parts, and it's Claim 22, which both parties agree is directed to and covers the figure 3A embodiment. So the embodiment where there's a separate door, and then it slides out on the shelf. And the wording of Claim 22 has a control panel and then a door separate from the control panel. So it's very clear that control panel, at least in that claim, does not include the door. And what Miller's asking this panel to do and has asked the district court to do is to say, oh, but for these other claims, for Claims 1, 14, and 16, actually a separate unattached independently moving door is part of the control panel. And, you know, there's a presumption in patent law that the same claim term used in different claims means the same thing. And I would posit that that's especially true here where we're talking about a structure. This is not something, you know, the cases that Miller cites discuss terms like substantially, substantially pure, you know, things where you envision it might mean something different depending on the context. Here we're talking about a physical part of the apparatus. So respectfully, I think that the cases that Miller has cited on that point are inapposite. Then I think, Judge Chen, you also zeroed in on some of the surrounding claim language, which does not make sense if you consider a control panel to be control panel plus a separate unattached independently moving door. And it's things like the base end and the distal end. How do I know what's the base end and the distal end if it's, you know, two things that aren't attached and move separately? And similarly, in the first storage position, in the second operable position, let's say that in the shelf and door example, the door is open, but the controls are not yet extended. Are we in the first position or the second position? It's not answered. And the reason it's not answered is because it was never contemplated that the term control panel would include a separate unattached door. It was contemplated, like in the figure three example, that the control panel would include an attached door. So in their primary example, the controls are on the door, you fold the door down, and you are able to access the controls. So that language makes sense. It no longer makes sense if we're saying, oh, but control panel actually means these two unrelated things that move separate. What do we do with dependent claim four, which says the control panel comprises an outwardly sliding shelf? That's clearly not directed to figure three anymore. You're right, Your Honor. I agree with that, and I think there's a couple of answers. One is if you really look at the prosecution in history, that's a vestige of sort of how we got to where we got to. Originally, Miller tried to get claims on sort of a generic idea of a wrecker with controls that are movable. And if you look at those early claims, it made sense that we want movable controls. And then claim three is they're going to be on a door. Claim four is they're going to be on a sliding shelf. Later in prosecution, the examiner required them to amend the claims so that they no longer have that breadth. So, you know, the vestige of that remains. And, you know, maybe the examiner didn't look as carefully, as closely at the dependent claims. Are you saying claim four is invalid? Potentially. There may not be a written description for claim four. Or I think that the doctrine of- Or it's indefinite? I mean, I don't understand. I mean, it's presumptively valid, right? Yes. Yes. I would say that it's- Well, in our brief, we reference a potential example that could satisfy that claim four, which is sort of the filing cabinet style, where you would say arguably that is a sliding shelf that closes off access to the compartment. And that's in- we have a picture in appendix 1269. Yes, we have a picture. And so if it's- a person of ordinary skill in the art could, I believe, conceive of a design that was not a sliding shelf, that still met the closing off the compartment door example. But even beyond that, claim differentiation isn't absolute. If we want to have the claims have different scope and everything makes sense. But in this case, I would say that the dependent claims are sort of infected by the prosecution history and maybe are no longer the model of clarity. But I would say, you know, given our example, it is an example that- the filing cabinet is an example that makes sense, that could satisfy that claim that's different in scope than that claim one, and which doesn't require us to do the mental gymnastics of saying, oh, but control panel actually means this plus a separately independent moving door. And then even beyond just like sort of the plain language, I think that- and I think Judge Dyke, you may have mentioned this. The prosecution history is quite clear that the examiner was unwilling to give Miller a patent on this general idea of a record with movable controls. They asked, he said no. They asked, he said no. There were five rounds of amendments where they really tried to keep that claim scope. And the examiner was steadfast in saying, no, I believe that's obvious over the prior art. Then if we look at the last set of amendments and the interview summary and the notice of allowance, we can see it was critical to the examiner that Miller be limited to sort of these specific structures. He said, okay, I mean in the interview summary and paraphrasing, he said, okay, if you amend the claims to, you know, make them specific to the structure, such as adding door 25, then they would be allowable. And so it's clear he's saying, if you limit the claims in this way, you can have Miller does what he says. Now, they didn't add the word door to claims 1 and 14, but they did say, well, the control panel is operable to close off the interior compartment. So in effect saying, you know, limiting into that structure or at least some structure where the control panel itself and not a separate door closes off that compartment. And more than that, Miller said that's what they were doing. In their remarks accompanying that last amendment, they said it was discussed in the interview that if the claims were amended as they now have been, they would be allowable. So anyone looking at this prosecution history from an objective standpoint would say they did what he said. They limited the claims and those are the claims that they have now. And finally, the notice of allowance by the examiner, he he underlines closes off the compartment. And I'm looking at Appendix seven, five, six. And so there's no secret here that that these claims were narrowed during prosecution. As was required in order to overcome the the obviousness projections. Now, curiously, in the briefing, I would point especially to the reply, I believe, pages seven to 11. Miller said, no, we didn't we didn't narrow the claims. They're not even saying we didn't narrow the claims in this specific way. They're saying we didn't narrow the claims at all. So that's not what they told the examiner. And that's not what an objective reading of the specification shows. So I would say, you know, they're not even really hiding the ball. They're saying, you know, I don't care what we said in during the examination, but I think we still have that broad claim to a record with movable controls. And it's just it is belied by the record. I think that one point I did want to make. And I think Judge Chen, I actually wrote card before the horse down in my notes here, because I think you keyed in exactly on what Miller's doing here. And they're saying, how can I make these claims read so that they cover NRC's embodiment? That's not how how we do claim construction. But I think that, again, they're not hiding the ball on what they're doing there. They're saying, well, the control panel must be whatever performs these three functions. And, you know, we came up with an analogy that, you know, maybe it's helpful, maybe it's not. But if you think of a car that claims the steering wheel that steers the car and has controls for the radio, the steering wheel has those two things. Under a normal approach, you would say, OK, what's the steering wheel? It's this wheel. Does it have radio controls? Yes or no? That's how we determine whether it falls within the scope of the claim. Under this sort of contorted construction for Miller, you wouldn't do that. You'd look and say, OK, what steers the car, this wheel, where are the radio controls? Maybe they're on the wheel. It's part of the claim. Maybe they're on the dashboard. And now Miller says, oh, well, now the dashboard is part of the steering wheel because it performs one of the functions that the steering wheel does. So I think putting the car before the horse is exactly the right phrase in terms of, you know, understanding Miller's approach and why they're doing what they're doing. We agree with the district, that the district court was appropriately did not consider extrinsic evidence. I'm happy to talk about about that if it would be helpful to your honors. I don't think you need to do that. I think that if there are not further questions, I will see the rest of the time. OK. Thank you, Ms. Olson. Mr. Mazza, two minutes. Thank you, your honor. With respect, we think we still think the plain meaning of the claim language is broad enough to encompass that the control panel can cover three and three. And there is nothing in the file that suggests otherwise. The interview that the interview, nothing was agreed to and additional functional considerations were agreed to be discussed. But the examiner, this is what the interview says that a 748 examiner suggested amending based on structural aspects and goes on to talk about a door. But we also talked about a willingness to add claim two to claim one. Didn't do it. We certainly didn't add the door language. And the language that we did add in the final amendment is generic in Figures 3 and 3a. It simply says, it still says the control panel is movable, but now it says the control panel in the second position provides an interior open compartment. That's both Figures 3a and 3. And this filing cabinet example is a poster child for why the district court should have considered Brown. Because the filing cabinet example has a face that the operator would have people like this. He would lose all sight of the controls. You'd never use that. So that's why you have to tie these things to what a person with a learning skill would do. You would never do this. And the patent says, for example, claim 22, a strategic location providing an ergonomic position. That is not one of those things. Now back to Justice Chen, when you talked about doors separate from the control panel, it said a shell. It said the control panel includes a shell. And then it said a door separate from the control panel. That must mean a door separate from the rest of the control panel. Because the only examples talk about door as the closure mechanism. So door separate from the control panel in claim 22 must mean door separate from the rest of the control panel, i.e. the shell. Okay, I think we're out of time. Thank you. Thank you. Thank both counsel. The case is submitted.